**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chase C Aldridge, | No. CV-19-04592-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Chase Colton Aldridge's ("Claimant") appeal from the denial of his application for social security disability benefits. (Doc. 13). The Commissioner has responded, (Doc. 14), and Claimant has replied, (Doc. 17). The Court now rules on the appeal.

## I. BACKGROUND

### A. Disability Determination

To qualify for benefits, an applicant must first show he is "under a disability." 42 U.S.C. § 423(a)(1)(E). If he shows he suffers from a medically determinable physical or mental impairment that prevents him from engaging in any "substantial gainful activity," the applicant is disabled. *Id.* § 423(d)(1)–(2).

By rule, an Administrative Law Judge ("ALJ") for the Social Security Administration ("SSA") follows a five-step process to determine whether the applicant meets the statutory definition of disability. 20 C.F.R. § 404.1520(a)(1). This process may end at any step at which the ALJ can find the applicant disabled or not. *Id.* §

404.1520(a)(4). At step one, the ALJ determines whether the applicant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the applicant is not disabled. *Id.* If he is not, the ALJ proceeds to step two and considers whether any of the applicant's physical or mental impairments or combination of impairments are "severe." *Id.* § 404.1520(a)(4)(ii). If that threshold is met, the ALJ proceeds to step three to determine whether the applicant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the applicant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the applicant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most an applicant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). At step four, the ALJ uses the RFC to determine whether the applicant can still perform his "past relevant work." *Id.* § 404.1520(a)(4)(iv). If so, the applicant is not disabled. If not, the ALJ proceeds to the final step to determine whether—considering the applicant's RFC, age, education, and work experience—he "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the applicant cannot, he is disabled. *Id.*

### B. The ALJ's Decision

Here, the ALJ first found that Claimant was not doing substantial gainful activity. (Doc. 12-3 at 23). Next, the ALJ found that Claimant had the following severe impairments: autism spectrum disorder, unspecified bipolar disorder, and borderline intellectual functioning. (*Id.*). The ALJ then determined that none of these impairments met or medically equaled anything in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id.* at 24). Before proceeding to step four, the ALJ found Claimant had the requisite RFC to "perform a full range of work at all exertional levels" subject to several nonexertional limitations. (*Id.* at 27–34). In making that determination, the ALJ assigned little weight to the opinions of Dr. Brent Geary, Dr. Renee Behinfar, and Nurse Practitioner Daniel Chafetz. (*Id.* at 31–33). The ALJ also discounted Claimant's allegations regarding the severity of his limitations. (*Id.* at 28–29). The ALJ ultimately concluded that Claimant,

although Claimant had no past relevant work, he could make an adjustment to other work because, considering all his limitations, he could perform the requirements of a kitchen helper, cleaner, and material distributor. (*Id.* at 34–35). This appeal followed.

## II. ANALYSIS

### A. Standard of Review

This Court may not overturn the ALJ's denial of disability benefits unless it is legally erroneous or unsupported by substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Therefore, the Court must uphold the ALJ's decision even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Because harmless error principles apply in this context, this Court upholds the ALJ when the record makes clear that any error was "'inconsequential to the ultimate nondisability determination,' or 'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted). The Court "review[s] only the reasons provided by the ALJ in the disability determination," however, "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Revels*, 874 F.3d at 654 (quoting *Garrison*, 759 F.3d at 1010); *see Trevizo v. Berryhil*, 871 F.3d 664, 677 & n.4 (9th Cir. 2017) (explaining that the district court erred by

looking to the record and developing its own reasons to discredit a medical opinion); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) (explaining that if an agency order's validity depends on a determination "which the agency alone is authorized to make and which it has not made . . . a court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency").

**B. Opinions of Medical and Other Sources**

Claimant first quarrels with the ALJ's reasons for giving little weight to the opinions of Dr. Brent Geary, Dr. Renee Behinfar, and Nurse Practitioner Daniel Chafetz. (Doc. 13 at 6). The Commissioner maintains that the ALJ considered proper factors when evaluating these opinions, and that Claimant's contrary arguments focus too heavily on specific favorable evidence or, at worst, establish only harmless error. (Doc. 14 at 9–17).

Medical opinions from acceptable sources are generally entitled to deference but are not necessarily binding on the ALJ. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Where, as here, the record contains conflicting medical opinions, the ALJ may reject an examining doctor's opinion by providing, "specific and legitimate reasons that are supported by substantial evidence," which she may do by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating [her] interpretation thereof, and making findings." *Revels*, 874 F.3d at 654(first quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); and then quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Nurse practitioners, however, are "other sources" and "are not entitled to the same deference." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). To assign less weight to "other source" opinions, an ALJ need only give "germane" reasons with evidentiary support. *Id.* In either case, the ALJ may assign less weight to a source's opinion by providing a well-supported explanation of how the source's conclusions are inconsistent with the record as a whole. 20 C.F.R. § 404.1527; *see also Tommasetti*, 533 F.3d at 1041; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

<u>i.</u>  <u>Dr. Brent Geary – Examining Psychologist</u>

The ALJ considered, but assigned only little weight to, Geary's opinion that

Claimant was so significantly limited by his autism, range of memory, and bipolarity that his ability to function independently on a sustained basis was highly limited. (Doc. 12-3 at 33). In assigning that opinion little weight, the ALJ noted its inconsistency with the entire evidence of record, particularly work adjustment training case notes from 2014 and Claimant's mental health status examinations and progress notes from 2014 to the time of the hearing. (*Id.* at 29–33). Broadly, Claimant argues that there is no inconsistency between Geary's findings and the evidence cited because (1) Geary's diagnosis (consistent with other doctors) related to intellectual limitations but the evidence cited related to behavioral limitations; (2) the ALJ did not explain what made Claimant's care "conservative"; and (3) the ALJ inappropriately relied on activities of daily living that do not necessarily transfer to the work setting. (Doc. 13 at 12–20).

Addressing Claimant's first argument, the Court agrees with his general observation that an ALJ must engage with the underlying basis for a medical opinion, *Orn*, 495 F.3d at 634, but disagrees that the ALJ failed in that regard here. The relevant question is whether the evidence that the ALJ cited could also reasonably be viewed as inconsistent with Geary's opinions about how his neurocognitive disorders would prevent him from working. *See Andrews*, 53 F.3d at 1039–40. And the records from Claimant's time in the work adjustment program certainly sufficed in that regard.

For example, those records showed that Claimant was adequately groomed, understood his duties well, had no problems with authority figures, and exhibited appropriate punctuality. (Doc. 12-9 at 72–88, 93–114). Although Claimant sometimes received a score of "2" in certain performance categories, indicating a need for improvement, he was quite often awarded the maximum score of "3" too. Indeed, contrary to Geary's conclusions and the testimony of Claimant's mother, Claimant was not only able to follow instructions but was also reportedly improving in both his overall performance and in his ability to complete tasks without being told what to do. Finally, while Claimant, or his mother, gave Geary the impression that he had somehow "failed" the program "both times" he participated, the reports indicated that he voluntarily

withdrew from the program after speaking with his attorney. (*Compare* Doc. 12-9 at 56 *with* Doc. 12-9 at 118–19).[1]

Claimant offers no specific explanation as to why this evidence could not reasonably be viewed as inconsistent with Geary's opinion; instead, Claimant focuses on how Geary's conclusions were consistent with several other doctors who he claims similarly opined on his intellectual, instead of behavioral, limitations. (Doc. 13 at 13–15). In the abstract or in other contexts, the distinction Claimant draws between intellectual and behavioral limitations may have merit, but it does not establish error here, where the ALJ's task was to consider whether those limitations prevented Claimant from working. Thus, evidence from Claimant's work adjustment training program showing that he generally succeeded at work without frequently needing to be reminded of instructions and, indeed, even improved in this area and began to take initiative without instructions could certainly be viewed as inconsistent with Geary's abstract assessment that Claimant's intellectual limitations prevented him from working.[2]

Moreover, Geary's opinions concerning the severity of Claimant's limitations were also inconsistent with Claimant's self-reported belief that he got along well with others and felt his condition improving with medication, as well as the fact that examinations consistently noted "generally unremarkable" findings regarding his mental status. (Doc. 12-3 at 30; *see also, e.g.*, Doc. 12-8 at 92, 98, 104, 163, 180). Finally, to the extent that Claimant asserts that Geary's opinion must have been followed because it was consistent with the opinions of some other doctors, despite this other conflicting evidence of record, he simply asks this Court to second guess the ALJ's interpretation of evidence

---

[1] Claimant, or his mother, also made this misleading representation to other doctors, the ALJ, and in his appeal to this Court. (Docs. 12-3 at 57–59, 73; 12-8 at 66; 13 at 2). The Court notes further its agreement with the ALJ's observation that, if Geary had this information, his prognosis may have been different. (Doc. 12-3 at 33).

[2] Claimant appears to also argue that the ALJ erred by assessing Claimant's impairments herself when he had been assigned several Global Assessment of Functioning ("GAF") ratings around 50. (Doc. 13 at 15). But a GAF serves purposes that are different from the SSA's disability assessment, *Vargas v. Lambert*, 159 F.3d 1151, 1164 n.2 (9th Cir. 1998), and therefore the ALJ can reject it for its inconsistency with other evidence of record, *see Shorter v. Saul*, 777 F. App'x 209, 212 (9th Cir. 2019), like the ALJ did here, (Doc. 12-3 at 31).

susceptible to two rational interpretations, which is not this Court's function. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005).

The same evidence of record is also inconsistent with the testimony of Claimant's mother, which the ALJ compared to the information she told Geary, and upon which Geary's report was largely based. (Doc. 12-3 at 29, 33). Although Claimant states that the ALJ provided no support for this characterization, the record could not be clearer on this point because Geary himself said so. (Doc. 12-9 at 51) ("The mother provided a considerable amount of the information found below."). Claimant also incorrectly contends that the ALJ did not discount his mother's reports. (Doc. 13 at 9). Not so. The ALJ did discredit her, stating that Claimant's "behavior during work adjustment training [wa]s significantly different from his and his mother's testimony and . . . Geary's findings and opinion." (Doc. 12-3 at 29). Because an ALJ provides specific and legitimate reasons to reject an examining physician's opinion that is "to a large extent" based upon reports properly discounted as incredible, *Tommasetti*, 533 F.3d at 1041,[3] this too provided a proper basis for discounting Geary's report.

The Court also finds, despite Claimant's arguments to the contrary, that the ALJ provided a specific and legitimate reason for discounting Geary's opinion because it was inconsistent with Claimant's conservative treatment regimen. (Doc. 13 at 16). Claimant argues that the ALJ erred by failing to interpret the evidence related to Claimant's improvement "with an awareness that improved functioning while being treated and while limiting environmental stressor[s] does not always mean that a claimant can function effectively in a workplace." (*Id.*). This is not a case, however, where the ALJ improperly considered conservative treatment in denying benefits without also considering whether that treatment allowed the claimant to experience workplace success. *See Revels*, 874 F.3d at 667. Rather, the work adjustment training program records provided additional context indicating Claimant could succeed in the workplace

---

[3] Claimant cites *Ryan*, 528 F.3d at 1199–1200, for the notion that the doctor must be the one to discredit the person supplying them information. (Doc. 13 at 9). That case involved the higher "clear and convincing reason" standard, making its analysis on that point inapplicable here.

with conservative treatment, contrary to Geary's opinion. For similar reasons, the presence of that evidence also renders ineffective Claimant's contention that the ALJ's decision to deem his treatment conservative failed to account for the chronic nature of his condition. (*Id.*). Again, when an examining doctor opines that the severity of the claimant's impairments precludes sustained work, an ALJ does not err in assigning less weight to that opinion when the record also contains evidence that the claimant succeeded in the workplace environment while managing his condition with medication. *See Lindquist v. Colvin*, 588 F. App'x 544, 547 (9th Cir. 2014); *see also Inman v. Colvin*, 669 F. App'x 849, 850 (9th Cir. 2016) ("The ALJ properly accorded less weight to Inman's treating physician's opinion because it was contradicted by Inman's employment history . . . ."). In the end, this objection is yet another request for this Court to adopt Claimant's interpretation of the evidence over the ALJ's, which this Court cannot do. *Burch*, 500 F.3d at 680–81.

Given that substantial evidence supports these specific and legitimate reasons, the Court need not address Claimant's arguments opposing the ALJ's additional reasons for assigning little weight to Geary's opinion because if any errors occurred in analyzing these additional reasons (and the Commissioner concedes that there were) those errors were harmless at any rate. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *see Hume v. Saul*, 776 F. App'x 507, 507 (9th Cir. 2019); *see also Rosas v. Berryhill*, No. EDCV 17-02315-AS, 2019 WL 1403296, at *10 (C.D. Cal. Mar. 27, 2019) (collecting cases).[4]

### ii. Dr. Renee Behinfar – Examining Psychologist

Claimant next takes issue with the ALJ's decision to assign little weight to Behinfar's opinions. (Docs. 12-3 at 31–32; 13 at 20). Behinfar opined that Claimant needed clarification on simple instructions, appeared distractible and unfocused, likely

---

[4] For example, Claimant also contends that the ALJ erred because she "did not mention or give any review to . . . Geary's specific work-related restrictions." (Doc. 13 at 8). But any error was harmless because the ALJ's well-supported reason for discounting other aspects of Geary's opinion, namely its inconsistency with other record evidence, "apply equally well" to his findings on those specific restrictions. *Molina*, 674 F.3d at 1117.

needed repetition in the area of adapting to change, had only minimal social reciprocity, and would have difficulties getting along with coworkers and following instructions without supervision. (Doc. 13 at 20). The ALJ found Behinfar's opinions "did not adequately take into consideration all of [his] subjective and objective symptoms, signs, limitations, and severity of condition," did not appear to be based on access to the entire record but instead on Claimant's mother's account, and were contradicted by Claimant's appearance at the hearing and performance in his work adjustment training. (Doc. 12-3 at 32). As explained above, the ALJ could reasonably view the work adjustment training records as contrary to Behinfar's observations because they generally tended to show that Claimant had performed adequately in the areas that Behinfar opined on, in a workplace environment. Behinfar clearly did not have access to these records and was told that Claimant "failed both times" he participated in the work adjustment training, which was obviously a fiction given that he actually stopped on advice of counsel. (Doc. 12-8 at 66). Moreover, because Behinfar noted a substantial amount of information supplied by Claimant's mother, (*id.* at 65), and Behinfar's conclusions largely reflected that information (with only one reference to her objective findings), the ALJ could reasonably conclude that Behinfar's opinions were largely premised upon Claimant's mother's subjective reports, reports that the ALJ had properly discounted given their inconsistency with other evidence. These were each specific and legitimate reasons for discounting Behinfar's opinion and were also supported by substantial evidence in the record.

Claimant now asserts the ALJ either offered no explanations in support of these reasons or that the explanations given were too vague to pass muster. (Doc. 13 at 20–21). But the ALJ was not required to rewrite evidentiary discussions contained elsewhere in her decision. *See Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010). That the ALJ simply referred to her earlier detailed discussion of evidence contrary to Behinfar's opinions and did not explicitly restate that evidence does not render her explanation vague or incomplete. It was clear how that evidence connected to Behinfar's opinions and why it detracted from them. *See Monroe v. Comm'r of Soc. Sec. Admin*, No. CV-18-

02571-PHX-JAT, 2019 WL 6712055, at *4 (D. Ariz. Dec. 10, 2019) (explaining that the ALJ must make an adequate effort to relate contrary record evidence to rejected medical opinions (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)). Notwithstanding Claimant's objections to the contrary, the ALJ provided specific and legitimate reasons for discounting this medical opinion.

### iii. Nurse Practitioner Daniel Chafetz

Claimant finally takes issue with the ALJ's reasons for discounting the opinions of Nurse Practitioner Daniel Chafetz. (Doc. 13 at 21–22). Because Chaftez is an "other source," the ALJ needed only germane reasons with evidentiary support to do so.

Here, Chafetz opined that Claimant had moderate to severe mental limitations, including heavy sedation as a side-effect of his medication. (Doc. 12-3 at 31). The ALJ discounted his opinion for its inconsistency with the entire evidence of record, citing evidence of Claimant's progress reports and mental status examinations that tended to show he was generally outgoing, friendly, capable of helping around the house, never reported side effects, and received conservative treatment. (*Id.*). Claimant cursorily argues that these reasons lacked evidentiary support for the same reasons that he alleges Geary's and Behinfar's did. (Doc. 13 at 22). By this, the Court takes Claimant to refer back to his review of the evidence which he viewed as consistent with Geary and Behinfar's opinions. (*Id.* at 12–19). As the Court has already stated, however, Claimant's arguments in this regard at best offer a dueling rational interpretation of the record. In such a scenario, the Court must accept the ALJ's interpretation.[5]

### C. Claimant's Subjective Symptom Testimony

Claimant next argues the ALJ improperly assessed his subjective testimony about his disabling limitations, broadly asserting the ALJ never specified what daily activities conflicted with his limitations, that the activities cited did not conflict with those

---

[5] The Court's analysis also applies to Claimant's brief argument that the ALJ erred by giving significant weight to non-examining sources. (Doc. 13 at 22 n.18). Opinions of nonexamining physicians, "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

limitations, and that other evidence in the record supports the contrary conclusion. (Doc. 13 at 23–25). In response, the Commissioner argues that the ALJ's evaluation of Claimant's subjective pain testimony was completely proper. (Doc. 14 at 14-19).

An ALJ's credibility assessment of subjective symptom testimony proceeds in two steps. *Tommasetti*, 533 F.3d at 1039. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)). If he does so, "and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281, 1283–84). The ALJ may rely on numerous factors when doing so but cannot discredit the claimant's testimony solely because it was not substantiated by objective medical evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); 20 C.F.R. § 404.1529(c)(2).

At the hearing, Claimant testified that he could not work because his mental impairment created an intense lack of focus, caused him to make mistakes, and resulted in anger issues.[6] (Doc. 12-3 at 55–65). The ALJ discounted Claimant's subjective symptom testimony for several reasons, including that they were yet again inconsistent with observations contained in the work adjustment training program records, (*id.* at 29), and it is axiomatic that this was a proper matter to consider, *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *see also Molina*, 674 F.3d at 1113; *Magallanes*, 881 F.2d at 755. As noted, evidence that Claimant's impairments did not prevent him from succeeding in a workplace environment obviously conflicted with his allegations that he could not do so. Claimant's contrary argument that the work adjustment training report was not at odds with his testimony because his testimony concerned at-home behavior,

---

[6] Although Claimant now maintains that the ALJ cited nothing to discredit his testimony that he could not engage in "sustained" work, the fact is that Claimant never gave that testimony. (*E.g.*, Doc. 13 at 23, 25). Furthermore, it is unclear how evidence of Claimant's ability to work four-hour days competently fails to conflict with opinion evidence that he could not engage in sustained work.

fundamentally misconceives the relevant inquiry when calculating the RFC. 20 C.F.R. § 404.1545(a)(1). This alone was a clear and convincing reason to assign only little weight to Claimant's subjective symptom testimony.[7]

Accordingly, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for not accepting Claimant's subjective symptom testimony.

**III. CONCLUSION**

Based on the foregoing,

IT IS ORDERED that the decision of the Commissioner is AFFIRMED. The Clerk of the Court shall enter judgment accordingly.[8]

Dated this 11th day of March, 2020.

James A. Teilborg
Senior United States District Judge

---

[7] Claimant briefly asserts that the ALJ erred when she "rejected" the lay witness testimony of Claimant's mother on the basis that it was not as persuasive as that of medical professionals. (Doc. 13 at 25 n.19). As should be clear by the foregoing discussion, however, the ALJ also discredited her testimony because it was inconsistent with the entire evidence of record, specifically the work adjustment training program records.

[8] To the extent mandate is required, the judgment shall serve as the mandate.